**SIGNED this 28 day of June, 2005.**

_____
**LEIF M. CLARK**
**UNITED STATES BANKRUPTCY JUDGE**
_____

# United States Bankruptcy Court

**Western District of Texas**
**San Antonio Division**

| | |
|---|---|
| IN RE | BANKR. CASE NO. |
| I.G. SERVICES, LTD., | 99-53170-C |
| IWG SERVICES, LTD. | 99-53171-C |
| | JOINTLY ADMINISTERED UNDER |
| | 99-53170-C |
| DEBTORS | CHAPTER 11 |
| LEN B. BLACKWELL, IN HIS CAPACITY AS TRUSTEE OF THE INVESTOR CLAIMS TRUST | |
| PLAINTIFF | |
| v. | ADV. NO. 04-5041-C |
| WELLS FARGO BANK, N.A. AND WELLS FARGO BANK OF TEXAS, N.A. | |
| DEFENDANTS | |

**MEMORANDUM OPINION REGARDING THE DEFENDANTS'**
**MOTIONS FOR SUMMARY JUDGMENT**

The defendants moved for summary judgment on multiple issues. *See* Docs. # 133, 134, 135 and

136 (defendants' summary-judgment motions).  The court heard arguments on April 13, 2005, and ruled

on the record on April 21, 2005.  *See* Doc. # 187 at 1-45 (TRANSCRIPT OF THE COURT'S APRIL 21, 2005

RULING).  The court outlines its reasoning here for ease of reference.

**Background**

This lawsuit alleges two causes of action against the Wells Fargo defendants: knowing participation

in breach of trust, and knowing participation in breach of fiduciary duty.  The defendants filed four

summary-judgment motions, each focusing on a separate legal issue.  The first summary-judgment motion

alleges that the plaintiff did not timely file its knowing-participation-in-breach-of-fiduciary-duty cause of

action.  The second motion argues that Article 4A of the Uniform Commercial Code, which deals with bank

processing of funds transfers, preempts or precludes the plaintiff's causes of action.  The third motion

alleges that the plaintiff fails to establish the existence of underlying trusts and fiduciary duties necessary to

support his knowing-participation causes of action.  The last motion attacks the knowledge and

participation elements of the plaintiff's causes of action, that is, the defendants claim that there is no

summary-judgment evidence showing that they knew of any breaches of trust or fiduciary duty, much less

participate in the alleged breaches.

**What is the limitations period for a knowing-participation-in-breach-of-fiduciary-duty cause of
action?**

Before the Texas Legislature amended the Civil Practice and Remedies Code in 1999 to specify

a four-year limitations period for breach-of-fiduciary-duty causes of action, *see* TEX. CIV. PRAC. & REM.

CODE Ann. § 16.004(a)(5) (Vernon 2002), Texas courts were split on whether the limitations period was

four years or two.  *See Cathey v. Meyer*, 115 S.W.3d 644, 668 (Tex. App.–Waco 2003, pet. filed)

(listing cases on both sides). The defendants argue, of course, for the shorter limitations period. The court finds more persuasive the cases that interpret the 1999 amendment as a clarification that the limitations period was always four years. *See, e.g.*, *Rice v. Louis A. Williams & Assocs.*, 86 S.W.3d 329, 335 (Tex. App.–Texarkana 2002, pet. denied) (stating that section 16.004(a)(5) "demonstrates the Legislature's understanding that Section 16.004 always applied a four-year statute of limitations to breach of fiduciary duty claims.").

Because the court also finds that the discovery rule applies, *see Tex. Soil Recycling, Inc. v. Intercargo Ins. Co.*, 273 F.3d 644, 649 (5th Cir. 2001) (citing Texas Supreme Court cases), the plaintiff's knowing-participation-in-breach-of-fiduciary-duty cause of action did not accrue until July 1999. Thus, the plaintiff filed suit within four years whether the court uses what the plaintiff argues is its date of filing, June 2001, or what the defendants argue, June 2003. The defendants' summary-judgment motion regarding limitations is therefore DENIED.

**Does Article 4A of the U.C.C. preempt or preclude the plaintiff's causes of action?**

Article 4A of the Uniform Commercial Code, which deals with wire transfers, was adopted by the Texas Legislature in TEX. BUS. & COM. CODE Ann. § 4A.101 et seq. (Vernon 2002). The comment to § 4A.102 states that the "rules [of Article 4A] are intended to be the *exclusive* means of determining the rights, duties and liabilities of the affected parties in any situation covered by particular provisions of the Article." TEX. BUS. & COM. CODE Ann. § 4A.102, cmt. (Vernon 2002) (emphasis added). The defendants rely primarily on that comment to argue that Article 4A preempts or precludes the plaintiff's causes of action; the causes of action are preempted because the defendants cannot be liable for doing what Article 4A expressly allows them to do. The court disagrees because it "could hardly have been the

-3-

intent of the drafters to enable a party to succeed in engaging in fraudulent activity, so long as it complied with the provisions of Article 4A." *See Regions Bank v. Provident Bank, Inc.*, 345 F.3d 1267, 1276 (11th Cir. 2003). More to the point, Article 4A does not apply to participation causes of action based on breaches of fiduciary duty or trust. "The exclusivity of Article 4A is deliberately restricted to 'any situation covered by particular provisions of the Article.' Conversely, situations not covered are not the exclusive province of the Article." *See Centre-Point Merchant Bank Limited v. American Express Bank Limited*, 913 F.Supp. 202, 205 (S.D.N.Y. 1996). The defendants' summary-judgment motion as to Article 4A is therefore DENIED.

**Do underlying trusts exist to support the plaintiff's knowing-participation-in-breach-of-trust cause of action?**

The defendants next argue that there are no underlying trusts to support the plaintiff's knowing-participation-in-breach-of-trust cause of action. The plaintiff gives the court no reason to find an issue of material fact on the existence of any underlying trust. Nevertheless, the defendants' and plaintiff's references to the trust-fund doctrine merit additional discussion. Under the court-created trust-fund doctrine,

> . . . when a corporation (1) becomes insolvent and (2) ceases doing business, then the assets of the corporation become a trust fund for the benefit, primarily, of its creditors. *The officers and directors hold the corporate assets in trust for the corporate creditors.* They are placed in a fiduciary relation to and owe a fiduciary duty to the creditors. That duty obliges them to administer the corporate assets for the benefit of the creditors and to ratably distribute them. The breach of that duty gives rise to a cause of action against the *officers and directors* which can be prosecuted directly by the creditors.

*Fagan v. La Gloria Oil & Gas Co.*, 494 S.W.2d 624, 428 (Tex. Civ. App.–Houston [14th Dist.] 1973,

-4-

no writ) (emphasis added).

However, the officers and directors are liable only to the extent that they hold assets of the corporation: "[T]he trust fund doctrine provides no basis for personal liability of directors. It only allows corporate creditors to follow the corporate assets and to subject those assets to the payment of their claims." *Henry I. Siegel Co. v. Holliday*, 663 S.W.2d 824, 827 (Tex. 1984); *see also Hunter v. Fort Worth Capital Corp.*, 620 S.W.2d 547, 550 (Tex. 1981) (referring to directors *and* officers). The Texas Supreme Court also clarified that the requirement is not that a corporation become insolvent and cease to do business, but that the corporation be dissolved. *See id.*; *cf. In re Blanton*, 105 B.R. 811, 823 (Bankr. W.D. Tex. 1989) (citing pre-*Hunter* cases).

The Texas legislature later supplanted the equitable trust-fund doctrine with the Texas Business Corporation Act. *Hunter*, 620 S.W.2d at 551; *Pellow v. Cade*, 990 S.W.2d 307, 313 (Tex. App.–Texarkana 1999, no pet.). The key features of the trust-fund doctrine – that officers and directors may be liable to the corporation's creditors upon the corporation's dissolution, but only to the extent that the officers and directors hold corporate assets – were preserved in article 1303-2.07B of the Revised Civil Statutes. Article 1303-2.07B states:

> In the exercise of [powers necessary to wind up corporate affairs], the directors and officers shall be *trustees for the benefit of creditors*, shareholders, members, or other distributees of the corporation and shall be jointly and severally liable to such persons to the extent of the corporate property and assets that shall have come into their hands.

TEX. REV. CIV. STAT. ANN. art. 1302-2.07B (Vernon 1986) (emphasis added); *see also Holliday*, 663 S.W.2d at 827 (quoting article 1302-2.07B).

The legislature repealed article 1303-2.07B in 1987. *See* Acts 1987, 70th Leg., ch. 93, §48(b),

eff. Aug. 31, 1987.  The remnants of the trust-fund doctrine now reside in article 7.12B of the Texas

Business Corporation Act.  *See Hunter*, 620 S.W.2d at 551.  The second sentence of article 7.12B states:

> In the exercise of those powers [necessary to manage the affairs of the dissolved corporation], the *directors* shall have the same duties to the dissolved corporation that they had immediately prior to the dissolution and *shall be liable* to the dissolved corporation for actions taken by them after the dissolution *to the same extent that they would have been liable* had those actions been taken by them *prior to the dissolution*.

TEX. BUS. CORP. ACT ANN. art. 7.12B (Vernon 2003) (emphasis added).  As the legislative history

explains, "[b]ecause a director does not have a standard of conduct of a trustee in exercising powers prior

to dissolution, there was no logical basis for imposing a trustee standard for the conduct of actions taken

by directors."  *Id.*, *Comment of Bar Committee* (1996).

The plaintiff cannot rely on the trust-fund doctrine, as set out in article 7.12B, to create an

underlying express trust.[1]  Because directors (and officers for that matter) do not hold corporate assets in

express trust for creditors *before* corporate dissolution, an express trust cannot exist *after* dissolution under

article 7.12B.  Article 7.12B therefore creates no express trust of corporate assets that the directors and

officers hold for the benefit of the corporation's creditors.[2]  Because the plaintiff cannot establish a factual

---

[1] It is helpful to keep in mind that the plaintiff is alleging knowing participation in breach of trust. Courts unfortunately use the phrase "breach of trust" to mean two distinct things: breach of *express* trust, and constructive trust.  *See Pennington v. Ray*, 2001 WL 33067 at *8 (Tex. App.–Dallas Jan. 16, 2001, no pet.) (distinguishing between breach of express trust and constructive trust).  The plaintiff apparently uses "breach of trust" to mean "breach of express trust" because he does not plead nor argue the elements of a constructive trust.  *See In re Haber Oil Co.*, 12 F.3d 426, 437 (5th Cir. 1994) (listing the elements of a constructive-trust cause of action); *see also In re Country Junction, Inc.*, 41 B.R. 425, 432 (W.D. Tex. 1984) (recognizing that constructive-trust cause of action is more accurately described as an equitable remedy).

[2] In any case, it is questionable whether the trust-fund doctrine even applies here because our case does not involve corporate dissolution under the Texas Business Corporation Act.  *See Prostok v. Browning*, 112 S.W.3d 876, 908 n.41 (Tex. App.–Dallas 2003, pet. granted) (distinguishing

issue on the existence of an underlying trust necessary for a knowing-participation-in-breach-of-(express)-trust cause of action, the court GRANTS the defendants' summary-judgment motion as to that cause of action.

**Do underlying fiduciary duties exist to support the plaintiff's knowing-participation-in-breach-of-fiduciary-duty cause of action?**

The defendant also argues that there are no underlying fiduciary duties to support the plaintiff's knowing-participation-in-breach-of-fiduciary-duty cause of action. The plaintiff relies on the zone-of-insolvency theory and broker-client relationship to argue that the underlying fiduciary duties exist. The zone-of-insolvency theory states that when a corporation enters the zone or vicinity of insolvency, the fiduciary duty of directors and officers is shifted to the corporation's creditors. *In re Brentwood Lexford Partners, LLC*, 292 B.R. 255, 272-73 (Bankr. N.D. Tex. 2003). Several courts have recognized the validity of the zone-of-insolvency theory under Texas law. *See id.*; *Weaver v. Kellogg*, 216 B.R. 563, 583-84 (S.D. Tex. 1997) ("[I]t appears that under both Delaware and Texas law, corporate insiders . . . may have a fiduciary duty to the corporation's *creditors* [in the zone of insolvency].") (emphasis added); *Carrieri v. Jobs.com Inc.*, 393 F.3d 508, 534 n.24 (5th Cir. 2004) (citing *Weaver* with approval).[3]

_____

reorganization in bankruptcy from corporate dissolution), *rev'd on other grounds*, – S.W.3d –, 2005 WL 1252329 (Tex. May 27, 2005); *and* TEX. BUS. CORP. ACT ANN. art. 7.12F (Vernon 2003) (defining "dissolved corporation").

[3] *Weaver* and *Brentwood* ultimately rely on an unpublished Delaware Chancery case, *Credit Lyonnais Bank Nederland, N.V. v. MGM-Pathe Comm. Co.*, 1991 WL 277613 at *34 n. 55 (Del. Ch. Dec. 30, 1991). *See Weaver*, 216 B.R. at 583 (citing *Credit Lyonnais*); *Brentwood*, 292 B.R. at 272 (citing *In re Hechinger Inv. Co. of Del.*, 280 B.R. 90, 92 (D. Del. 2002), which in turn cites *Credit Lyonnais*). The Delaware Chancery court recently acknowledged that courts have read *Credit Lyonnais* "as authorizing creditors to challenge directors' business judgments as breaches of fiduciary duty owed to them [the creditors]." *Prod. Res. Group, L.L.C. v. NCT Group, Inc.*, 863 A.2d 772,

The court therefore finds the zone-of-insolvency theory viable under Texas law.  A fiduciary duty based on the zone-of-insolvency theory can be breached when "there has been prejudice to the creditors [which may exist when] the transaction is a fraudulent conveyance or one which led to corporate insolvency" or when the director or officer breaches a duty owed to the corporation.  *See Weaver*, 216 B.R. at 583-84.  The summary-judgment record creates enough of a factual issue to let a jury decide whether an underlying breach of fiduciary duty existed, where the duty arises within the zone of insolvency.

**Fiduciary duty arising out of a broker-client relationship**

The plaintiff also justifiably relies on the fiduciary duty owed by a broker to its client.  *See Tapia v. Chase Manhattan Bank, N.A.*, 149 F.3d 404, 412 (5th Cir. 1998); *Laird v. Integrated Resources, Inc.*, 897 F.2d 826, 835 (5th Cir. 1990); *Romano v. Merrill Lynch, Pierce, Fenner & Smith*, 834 F.2d 523, 530 (5th Cir. 1987); *In re Rea*, 245 B.R. 77, 90-91 (Bankr. N.D. Tex. 2000).  The plaintiff creates a material issue of fact on breach of fiduciary duty owed by a broker to its clients, but only with respect to Inverworld's external-products customers.  The plaintiff fails to do so with respect to customers holding internal products because the only supporting affidavit on this issue was stricken.  *See* Doc. # 157, Exh. B (Tyler Bryant's affidavit).

The court therefore Grants summary judgment for the defendants with regard to the knowing-

---

789 n.55 (Del. Ch. 2004) (pointing to *Weaver*).  According to the *NCT Group* court, that reading of *Credit Lyonnais* is wrong.  It is arguably more precise to say that the fiduciary duty is always owed to the corporation, but creditors may derivatively assert breaches of that duty when the corporation is in the zone of insolvency.  *Id*. at 789-92; *see also In re I Successor Corp.*, 321 B.R. 640, 660 n.6 (Bankr. S.D.N.Y. 2005); *In re Adelphia Communications Corp.*, 323 B.R. 345, 386 n. 140 (Bankr. S.D.N.Y. 2005).  Be that as it may, this court cannot lightly disregard Fifth Circuit dicta in *Jobs.com* that cites *Weaver* with approval.  *See Van Blaricom v. Forscht*, 511 F.2d 615, 618 (5th Cir. 1975) ("If these be dicta, they are dicta from on high, and we are not inclined to disregard their counsel.").

participation-in-breach-of-fiduciary-duty cause of action, but only to the extent that the fiduciary duty arises from a broker-client relationship dealing with internal products.

**Did the plaintiff create fact issues on the knowledge and participation elements?**

The defendants' last argument attacks the knowledge and participation elements. The court explained on the record how the summary-judgment record creates enough of a factual issue on the participation element. Unlike the participation element, the knowledge element took a bit more legal research to unravel. Part of the problem is that Texas courts, in discussing knowing-participation causes of action, rely on three distinct lines of cases without distinguishing or acknowledging the different lines: (1) *Kinzbach Tool Co. v. Corbett-Wallace Corp.*, 160 S.W.2d 509, 514 (Tex. 1942) and its progeny; (2) *Woodward v. Metro Bank of Dallas*, 522 F.2d 84, 95-96 (5th Cir. 1975), which deals with aiding-and-abetting liability under Rule 10b-5, and its progeny; and (3) case law under the Texas Securities Act, which, unlike federal securities law, still allows for aiding-and-abetting causes of action, *see Frank v. Bear, Stearns & Co.*, 11 S.W.3d 380, 384 (Tex. App.–Houston [14th Dist.] 2000, pet. denied) *and Sterling Trust Co. v. Adderley*, 119 S.W.3d 312, 319 (Tex. App.–Fort Worth 2003, pet. granted). To make matters worse, all three lines of cases rely on, or mention in passing, section 876 of the Restatement of Torts. *See* RESTATEMENT (SECOND) OF TORTS § 876(b) (1979).

Because knowing participation in breach of fiduciary duty is a state-law claim, the court places more weight on what *Kinzbach* and its progeny has to say on the components of the knowledge element. It appears that Texas law requires the Wells Fargo defendant to have knowledge (1) that the underlying violator was a fiduciary, (2) of the specific fiduciary duty that was breached (but constructive knowledge may be sufficient), and (3) of the underlying breach (and, again, constructive knowledge may be sufficient).

Unlike *Woodward* and its progeny, the *Kinzbach* line of cases does *not* require the Wells Fargo defendants to have general awareness of its role in an improper activity, knowledge that it rendered assistance or participated, or knowledge that its assistance or participation was substantial. *Compare City of Fort Worth v. Pippen*, 439 S.W.2d 660, 664-65 (Tex. 1969); *Juhl v. Airington*, 936 S.W.2d 640, 644 (Tex. 1997); *Tinney v. Team Bank*, 819 S.W.2d 560, 564 (Tex. App.–Fort Worth 1991, writ denied); *Cox Tex. Newspapers, L.P. v. Wootten*, 59 S.W.3d 717, 722 (Tex. App.–Austin 2001, no pet.) *with Akin v. Q-L Invs. Inc.*, 959 F.2d 521, 531 (5th Cir. 1992); *Abbott v. Equity Group, Inc.*, 2 F3d 613, 621 (5th Cir. 1993); *FDIC v. First Interstate Bank of Des Moines, N.A.*, 885 F.2d 423, 429 (8th Cir. 1989); *Aetna Cas. and Sur. Co. v. Leahey Constr. Co.*, 219 F.3d 519, 534 (6th Cir. 2000).

Having determined the proper legal standard, the court finds the plaintiff creates a factual issue on the knowledge element for the reasons stated at the April 21, 2005 hearing.

**Conclusion**

In short, the causes of action which survive the defendants' summary-judgment motions are (1) knowing-participation-in-breach-of-fiduciary-duty claim, where the fiduciary duty arises out of breaches occurring within the zone of insolvency and (2) knowing-participation-in-breach-of-fiduciary-duty claim arising out of a broker-client relationship, but only for external products. For the reasons stated at the April 21, 2005 hearing and outlined here, the court DENIES the defendants' summary-judgment motion on the issue of limitations (Doc. # 135); DENIES the defendants' summary-judgment motion on the issue of Article 4A (Doc. # 133); DENIES the defendants' summary-judgment motion on the issue of knowledge and participation elements (Doc. # 136); GRANTS the defendants' summary-judgment motion regarding absence of an underlying trust as to the knowing-participation-in-breach-of-trust cause of action (Doc. #

134); and Partially Grants the defendants' summary-judgment motion regarding absence of underlying fiduciary duties, partially because the court is ruling for the defendants only to the extent that the fiduciary duty arises out a broker-client relationship dealing with internal products (Doc. # 134).

As the court stated at the April 21, 2005 hearing, the time for filing a notice of appeal will not run until this judgment is entered on the docket.  *See* Fed. R. Bankr. P. 8002; *In re Henry Bros. P'ship*, 214 B.R. 192, 195 (B.A.P. 8th Cir. 1997).

# # #