

**SIGNED this 31st day of July, 2007.**

_____
**LEIF M. CLARK
UNITED STATES BANKRUPTCY JUDGE**
_____

# United States Bankruptcy Court
**Western District of Texas
San Antonio Division**

| | |
|---|---|
| IN RE | BANKR. CASE NOS. |
| I.G. SERVICES, LTD. | 99-53170-C |
| I.W.G. SERVICES, LTD. | 99-53171-C |
| *DEBTORS* | CHAPTER 11 |
| J. ROBERT MEDLIN, TRUSTEE OF THE INVESTOR CLAIM TRUST | |
| *PLAINTIFF* | |
| V. | ADV. NO. 04-5041-C |
| WELLS FARGO BANK, N.A. & WELLS FARGO BANK OF TEXAS, N.A. | |
| *DEFENDANT S* | |

**REPORT AND RECOMMENDATION ON RES JUDICATA ISSUE**

CAME ON for consideration the foregoing matter. This matter is pending before the U.S. District Court for the Western District of Texas, the Hon. Fred Biery presiding. Judge Biery referred to this court a discrete question – whether *res judicata* bars the presentment of the plaintiff's case against the defendants.

What raises the issue is straightforward. The predecessor in interest to the current plaintiff, Len Blackwell, acting in his capacity as chapter 11 trustee for these bankruptcy estates, brought an action against these defendants, alleging *inter alia* (and the only relevant allegations for our purposes here), knowing participation in breach of fiduciary duties and breach of trust. The defendants stated that the trustee, acting for the debtors, was required to bring these actions in arbitration, invoking an arbitration clause in its Cash Management Services Agreement. In the arbitration proceeding, the arbitration panel signed an award, stating that the plaintiff should take nothing on his claim. Judge Biery had previously entered an order stating that the arbitration could only apply to the action brought by the estate itself, and not the separate action (albeit one asserting similar claims and causes of action) asserted by the individual investors.[1] Thus, when Judge Biery confirmed the arbitration decision by final judgment, the decision was binding on the trustee who was bringing a cause of action owned by the bankruptcy estate, but not necessarily binding on the similar claims urged by the individual investors.

Meanwhile, the chapter 11 cases proceeded to confirmation. The plan provided, *inter alia*, that individual investors could contribute their claims into an investor claim trust, and also appointed a trustee to pursue the actions held by the trust. The plan appointed Mr. Blackwell to that position who, wearing his new hat, proceeded apace. Subsequently, Mr. Blackwell was succeeded by Robert Medlin. The reference was withdrawn for trial purposes only, with this court ruling on discovery and other preliminary motions. The litigation survived a number of motions to dismiss, including a motion claiming that the trustee lacked standing to pursue the action.

---

[1] In this case, these investors are actually creditors, because of the nature of the Inverworld business. None of the "investors" owned any equity interest in the Inverworld entities.

The matter was apparently close to ready for trial before the district court when Wells Fargo offered up a new theory. It claimed that *res judicata* barred the plan trustee from proceeding. The district court then referred this new question to this court for determination.

## REPORT

Many years ago, Orson Wells (then in the twilight of his career) sonorously announced in a television commercial for Gallo Winery that "they sell no wine before its time." The words could equally apply to this cause of action and the arguments currently being advanced by Wells Fargo. The question presented did not have a clear answer until May of this year, when the Delaware Supreme Court issued a decision clarifying the circumstances and manner in which creditors could sue directors and officers for breach of fiduciary duties. A bit of history is needed.

In this lawsuit, creditors seek to assert a cause of action on their own behalf, by way of the Investor Claim Trust, that normally would only be thought to be brought either by the debtor entity itself, or by its shareholders, by way of a derivative action. What gave life to this sort of creditor-initiated litigation was a decision out of the Delaware Chancery Court in 1991. *Credit Lyonnais Bank Nederland, N.V. v. Pathe Communications Corp.*, 1991 WL 277613 (Del. Ch. 1991). The chancellor there noted that directors and officers owe their fiduciary duties not so much for the benefit of the corporation itself as such, but rather for the benefit of the entities for whose benefit the corporation exists – its shareholders of course, but also its creditors, at least when the corporation enters the zone of insolvency. *Id.*, at *34. The comment picked up steam over the years from a number of quarters, giving rise to the notion that directors might have a fiduciary duty not to exacerbate a firm's insolvency, because to do so would do harm to the legitimate entitlements of the firm's creditors, and creditors thus would have a right to sue for damages resulting from directors'

or officers' breach of their fiduciary duties in "deepening" the firm's insolvency. *See, e.g. Geyer v. Ingersoll Publications Co,*, 621 A.2d 784, 787 (Del. Ch. 1992) (when insolvency arises, it creates fiduciary duties for the benefit of creditors); *Production Resources Group, LLC v. NCT Group, Inc.*, 863 A.2d 772, 790 (Del. Ch. 2004) (noting that it is "uncontroversial" that when a corporation is insolvent, directors owe fiduciary duties to the firm's creditors under Delaware law); *see also Carrieri v. Jobs.com*, 393 F.3d 508, 534 (5th Cir. 2004) (directors had expanded fiduciary duty to all creditors because the firm was in the zone of insolvency); *Weaver v. Kellogg*, 216 B.R. 563, 583-84 (S.D.Tex. 1997) (when directors believes the firm was in the zone of insolvency, the board knew or should have known that it needed to take action to salvage some value for both creditors and shareholders). On a similar track, the Fifth Circuit recognized that there might be "generalized claims" that creditors could bring on behalf of the estate, as opposed to particularized claims of individual creditors. *See Matter of Educators Group Health Trust*, 25 F.3d 1281, 1284-85 (5th Cir. 1994). Thus was born the raft of litigation in which creditors seek recovery from officers and directors, or recovery from those who it is alleged knowingly participated in the wrongful conduct of said officers and directors.

Courts across the nation have looked to Delaware for further developments and clarification regarding the cause of action seemingly[2] birthed by the *Credit Lyonnais* decision. But it was not until just this late spring that the Delaware Supreme Court finally weighed in, helping to clear what have been for many years very muddy legal waters. *See North American Catholic Educational*

---

[2] In fact, courts had recognized that fiduciary duties might be owed to a broader constituency than simply the corporation itself much earlier. *See, e.g.*, *Schacht v. Brown*, 711 F.2d 1343, 1350 (7th Cir. 1983); *FDIC v. Sea Pines Co.*, 692 F.2d 973, 977 (4th Cir. 1982); *see generally* F. Easterbrook & D. Fischel, *The Corporate Contract*, 89 COLUM. L.REV. 1416-1419-20 (1989) (noting that corporations do not exist as an end in themselves, but to facilitate contracts between directors and beneficiaries).

-4-

*Programming Foundation, Inc. v. Rob Gheewalla, et al.*, — A.2d —, 2007 WL 1453705 (Del. Sup. May 18, 2007). Creditors in that case sought to sue directors for breach of fiduciary duties. The Delaware Supreme Court ruled that the creditors did not have a *direct* action against the directors, because the essential nature of their action was a derivative suit on behalf of the corporation. *Id.*, at . While endorsing the chancery courts' rulings in *Credit Lyonnais* and *Production Resources*, to the effect that officers and directors *do* owe fiduciary duties to *both* shareholders *and* creditors, at least in the context of insolvency (and thus that both entities could conceivably bring actions for breach of those duties), the supreme court emphasized that the lower courts had only held that creditors had standing to bring *derivative* actions on behalf of the corporation. Explained the court:

> It is well settled that directors owe fiduciary duties to the corporation. ... When a corporation is *insolvent*, ... its creditors take the place of shareholders as the residual beneficiaries of any increase in value. Consequently, the creditors of an *insolvent* corporation have standing to maintain derivative claims against directors on behalf of the corporation for breaches of fiduciary duties. The corporation's insolvency makes the creditors the principal constituency injured by any fiduciary breaches that diminish the firm's value. ... Individual creditors of an insolvent corporation have the same incentive to pursue valid derivative claims on its behalf that shareholders have when the corporation is solvent.

*Id.*, at *7 (emphasis in original). The clarification is significant because, in the case pending before the *Gheewalla* court, an individual creditor sought to bring a *direct* action for breach of fiduciary duties against the directors of the firm. They asserted that *dicta* in an earlier Delaware Chancery Court decision, *Production Rescources*, authorized such a direct action. *See Production Resources Group, LLC v. NCT Group, Inc.*, 863 A.2d, at 798; *see also Big Lots Stores, Inc. v. Bain Capital Fund VII, LLC*, 2006 WL 846121 (Del Ch. 2006). The Delaware Supreme Court, however, expressly rejected that piece of *dictum*, stating that

> [t]o recognize a new right for creditors to bring direct fiduciary claims against those directors would create a conflict between those directors' duty to maximize the value of the corporation for the benefit of all those having an interest in it, and the newly recognized direct fiduciary duty to individual creditors. ... Accordingly, we hold that individual *creditors* of an *insolvent* corporation have *no right to assert direct* claims for breach of fiduciary duty against corporate directors.

*Gheewalla*, at *9 (emphasis in original). Added the court, in an observation directly relevant to the case at hand, "creditors may nonetheless protect their interest by bringing derivative claims on behalf of the insolvent corporation or any *other* direct nonfiduciary claim ... that may be available for individual creditors." *Id.* (emphasis in original).

The Delaware courts' decisions have proved to be immensely influential in the national debate over the shape of causes of action that have their genesis in breach of fiduciary duties on the part of officers and directors. Texas courts have said little on the subject, and there are few federal decisions within this circuit as well. It seems fair to say, however, that both state and federal courts within this jurisdiction are likely to give weight to the court from whence creditor-initiated actions for breach of fiduciary duties have emerged. *See, e.g., In re Vartec Telecom, Inc.*, 335 B.R. 631, 641 (Bankr. N.D.Tex. 2005).

The guidance offered by *Gheewalla* helps to resolve our issue. That court first affirmed the earlier rulings of both this court and the district court that, as a matter of *standing*, creditors had the right to bring actions for breach of fiduciary duties, and thus, by extension, actions for knowing participation in breach of fiduciary duties, at least when the corporation has entered the zone of insolvency. However, that court also has now clarified that the nature of the cause of action that creditors can bring is *derivative*, not *direct*. The essence of a derivative action is that it is brought

in the stead of a direct action brought by the corporation itself.[3] *Aronson v. Lewis*, 473 A.2d 805, 811 (Del. 1984) *overruled on other grounds by Brehm v. Eisner*, 746 A.2d 244 (Del. 2000); *see* TEX. BUS. CORP. CODE, § 21.551(1) (Vernon Supp. 2006); TEX. BUS. CORP. ACT, art. 5.14A(1) (Vernon 2003).

The present action by the Investor Claims Trust can only stand as a derivative action.[4] It cannot survive as a direct action. *See Gheewalla*, *supra*. But as a derivative action, it is also barred by principles of *res judicata*. The derivative action on behalf of the corporation has already been prosecuted by the corporation itself directly. The arbitration panel ruled in favor of the defendants in that direct action, a ruling already confirmed by a final judgment. The same action cannot now be prosecuted derivatively on behalf of the corporation, according the corporation (and its beneficiaries) what would amount to a second bite at the apple. Principles of *res judicata* are directly applicable here, and bar the further prosecution of this action by the Investor Claims Trust. *See Myer v. Americo Life Inc.*, 469 F.3d 731, 733 (8th Cir. 2006) (applying Texas law to find that *res judicata* barred relitigation of a matter already subject of a final judgment confirming an arbitration award, where the same issues were presented); *Amstadt v. United States Brass Corp.*, 919 S.W.2d 644, 653 (Tex. 1996) (second suit arising out of the same subject matter previously brought by

---

[3] There are valuable distinctions between actions brought directly by the corporation and derivative actions brought by the creditors of the corporation, most significantly having to do with whether the equitable defense of *in pari delicto* can be urged. *See generally Adelphia Communications Corp., et al. v. Bank of America, N.A., et al. (In re Adelphia Communications Corp.)*, 365 B.R. 24, 46-57 (Bankr. S.D.N.Y. 2007). In general, the emerging principal is that the equitable defense ought not be available when innocent strangers to the wrongful conduct bring the action derivatively. *See id.* However, those distinctions are not relevant to the narrow issue presented in this present action. They might be another day, another time, in another case.

[4] This is so even though that action is not against the directors but against Wells Fargo. That is the case because the essence of the action is one for damages to the corporate entity, as opposed to a *direct* action for *direct* harm to the creditors themselves. We know this because the cause of action is one for knowing *participation* in directors' breach of their fiduciary duties. Without a breach of fiduciary duties on the part of the directors, there could be no action for knowing participation, of course. And *Gheewalla* teaches that the harm caused by such breaches, and by extension, the exacerbation of that harm by those who knowingly participate in those breaches, is one inflicted on the corporation.

parties in privity is barred by *res judicata*); *see also Getty Oil Co. v. Ins. Co. of North America*, 845 S.W.2d 794, 800 (Tex. 1992) (privity established if entities can control action they are not parties to, their interests can be represented by the party to the action, or they are successors in interest, deriving their claims through a party to the prior action); *Kirby Lumber Corp. v. Southern Lumber Co.*, 145 Tex. 151, 196 S.W.2d 387, 388 (Tex. 1946) (persons are privy to a judgment whose succession to the rights of property adjudicated therein are derived through or under one or the other of the parties to the action).

### RECOMMENDATION

For the reasons stated, it is the recommendation of this court that the district court enter a final order dismissing this adversary proceeding on grounds of *res judicata*.

# # #