

**SIGNED this 19th day of March, 2008.**

_____
**LEIF M. CLARK
UNITED STATES BANKRUPTCY JUDGE**

_____

# United States Bankruptcy Court
**Western District of Texas
San Antonio Division**

| | |
|---|---|
| IN RE<br><br>I.G. SERVICES, LTD.,<br>IWG SERVICES, LTD.<br><br>*DEBTORS* | BANKR. CASE NO.<br><br>99-53170-C<br>99-53171-C<br>JOINTLY ADMINISTERED UNDER<br>99-53170-C<br><br>CHAPTER 11 |
| J. ROBERT MEDLIN, TRUSTEE OF THE<br>INVESTOR CLAIM TRUST<br><br>*PLAINTIFF*<br><br>v.<br><br>WELLS FARGO BANK, N.A. &<br>WELLS FARGO BANK OF TEXAS, N.A.<br><br>*DEFENDANTS* | <br><br><br><br><br><br>ADV. NO. 04-5041-C |

**SUPPLEMENTAL REPORT AND RECOMMENDATION ON *RES JUDICATA* ISSUE**

This matter is pending before the U.S. District Court for the Western District of Texas,[1] the Honorable Fred Biery presiding. Judge Biery previously referred to this court the discrete question whether *res judicata* bars the causes of action asserted by J. Robert Medlin on behalf of the Investor Claim Trust ("ICT," or the "plaintiff") against Wells Fargo Bank, N.A. and Wells Fargo Bank of Texas, N.A. (collectively, the "defendants" or "Wells Fargo").[2] On July 31, 2007, this court issued its Report and Recommendation, stating that the claims asserted in the present action could stand only as derivative claims on behalf of the debtors in the underlying bankruptcy cases. Because the district court had confirmed an arbitration award in favor of the defendants by final judgment, this court recommended that the district court enter a final order dismissing this adversary proceeding on grounds of *res judicata*. *See* Report and Recommendation on Res Judicata Issue (Doc. #314), *also available at* 2007 WL 2229650 (Bankr. W.D. Tex. July 31, 2007).

Since that time, the plaintiff has filed an objection[3] to the Report and Recommendation and further expressed its concerns about this court's recommendation during a status hearing held on August 27, 2007, several weeks after this court issued its Report and Recommendation.[4] In effect, the plaintiff, through its objection and arguments during the status hearing, asked this court to

---

[1] Civil Action No. SA-01-CA-583-FB. All pre-trial matters in this civil action were referred to this court by an order signed March 9, 2004. *See* Order Referring All Pre-Trial Matters to the Bankruptcy Court. (Adv. No. 04-5041-lmc, Doc. #1).

[2] Order Referring Res Judicata Issue to the Bankruptcy Judge. (Doc. #295). The plaintiff trust was formed under the terms of the confirmed plan in the related bankruptcy case. That plan gave investor-creditors the option to transfer their *individual* claims against I.G. Services, Ltd. ("IGS"), IWG Services, Ltd. ("IWG" and collectively, the "debtors"), or the two former principals of the debtor (Jose Zollino and George Fahey), into the trust for liquidation by Len Blackwell, the former Chapter 11 Trustee (who was later replaced by Mr. Medlin) in his capacity as the trustee of ICT. The distinctions among these different capacities will be discussed further in this report.

[3] Plaintiff's Objection to Report and Recommendation on *Res Judicata* Issue ("Plaintiff's Objection"). (Doc. #329).

[4] *See* Transcript at 7-9. (Doc. #328).

reconsider its Report and Recommendation, though without the procedural device of a Rule 59 motion with regard to a final order.[5] On January 9, 2008, the district court "re-referred" this matter for further consideration of the issues related to whether the plaintiff raised a "non-insolvency based claim" that might not be barred by *res judicata*, and asked this court to issue a report and recommendation on that narrow issue, or to supplement this court's previous Report and Recommendation, if necessary. Directly before this court, then, is a very narrow question: has the plaintiff asserted a cause of action based on a direct injury rather than injury to the debtors which derivatively harmed the plaintiff under the "zone of insolvency" theory, such that the claim is not barred by *res judicata*? The short answer to this question is "yes."

## REPORT

The district court noted in its order re-referring this matter that the parties appear to agree that the previous arbitration proceeding operates as *res judicata* and bars those claims that are based on the debtors' insolvency. The district court has asked this court to determine *only* whether the plaintiff has raised any "non-insolvency based claims" that would not be barred by *res judicata*.

On September 13, 2005, this court granted a partial summary judgment in favor of the defendants, leaving only two remaining causes of action: (1) the defendants' knowing participation

---

[5] Rule 59 does not apply to proposed findings and conclusions submitted by a bankruptcy court to the district court, because a report and recommendation is not a final order. In fact, there appears to be no procedural device for reconsideration of *proposed* findings of fact and conclusions of law. Federal Bankruptcy Rule 9033(b) provides the device for raising objections to proposed findings and conclusions, and Rule 9033(c) allows the bankruptcy court to extend the time for filing such an objection. But the rule stops short of providing the bankruptcy court with the procedural means for actually ruling on the objections. Instead, Rule 9033(b) requires the objecting party to "arrange promptly for the transcription of the record . . . unless the district judge otherwise directs." As a practical matter then, once this court issued its Report and Recommendation, the matter was no longer before this court. It was before the district court. Referral of matters under section 157(c) is not a two-way street. Once this court issued its Report and Recommendation, this court was not at liberty to pull the matter back from the district court for the purpose of reconsidering its report and recommendation or ruling on any objection thereto. Rule 9033(d) and, arguably, the final phrase of Rule 9033(b), provide the only means for such "reconsideration," and both require direction from the district court. It was not until the district court recommitted this matter to this court on January 9, 2008, that such a "reconsideration" was procedurally possible. *See* FED. R. BANKR. P. 9033(d).

in an alleged breach of fiduciary duties said to be owed to the plaintiff under the "deepening insolvency" theory; and (2) the defendants' knowing participation in an alleged breach of fiduciary duties owed *directly* to investors (now, the plaintiff) by way of a broker-client relationship.[6] The reason for this bifurcation of the plaintiff's cause of action stems from the manner in which the plaintiff phrased its pleading. The relevant paragraph of the live complaint alleges:

> As directors and officers of [the debtors,] Zollino and Fahey owed [the debtors] fiduciary duties of good faith, utmost loyalty and care. When [the debtors] became insolvent, creditors of the companies, including the investors, were owed the same fiduciary duties. *Further, as customers of a broker-dealer, the investors were directly owed fiduciary duties*.

Fifth Amended Complaint at 44-45, ¶ 153 (emphasis added). (Doc. # 110). The plaintiff's action against Wells Fargo in this case hinges on establishing the existence of an underlying fiduciary duty owed by the officers of the debtor entities to the investor/creditors whose claims were assigned to the Investor Claim Trust, and which claims are now being pursued by the ICT Trustee on behalf of the Trust. We focus first on the nature of that fiduciary duty in order to see whether the resulting causes of action are insolvency based or not. If they are not insolvency-based, then we still need to determine whether they might nonetheless be barred by *res judicata*.

**A. Are the Remaining Claims Asserted Non-Insolvency Based Claims?**

ICT's complaint asserted that the investor/creditors of the debtors were owed fiduciary duties under *two* distinct theories.[7] First, of course, the plaintiff alleged that Zollino and Fahey owed

---

[6] Memorandum Opinion Regarding the Defendants' Motions for Summary Judgment at 8, 10. (Doc. # 201). That written opinion put in writing this court's ruling on the record during a hearing held on April 21, 2005. The transcript from that hearing is available in the ECF Docket for this adversary proceeding. (Doc. #187). During the August 27, 2007 status hearing, counsel for the plaintiff stated that it preferred to label this relationship as more than a mere broker/dealer relationship, but also an investment advisor duty or an investment portfolio management duty. Transcript of Hearing Held on Aug. 27, 2007 at p. 10, ln. 15-23. (Doc. #328).

[7] As this Report discusses further below, by the terms of the debtors' confirmed plan, these investors assigned their claims to the ICT in exchange for a beneficial interest in the ICT.

-4-

fiduciary duties as officers of the corporation (duties ordinarily owed to the corporation), and that those duties were ultimately owed to the investors in their capacity as creditors of the corporate debtors once the debtors entered the "zone of insolvency." That argument rested on the theory that derivative claims are transformed into direct claims when a corporation enters the zone of insolvency. We now know that this argument must fail in light of *Gheewalla*. *See N. Am. Catholic Educ. Programming Found., Inc. v. Gheewalla,* 930 A.2d 92, 101 (Del. Supr. 2007); *see also* Report and Recommendation, *supra*, at 5-6 (discussing *Gheewalla*). The Delaware Supreme Court there held that those sorts of claims are still essentially derivative claims and may only be asserted by shareholders or creditors *on behalf of* the corporate debtors. Thus, a claim premised on a breach of fiduciary duties owed by an officer or director to a corporation after the corporation enters the "zone of insolvency" are "insolvency based claims" within the parlance of the district court's referral order. Those sorts of claims, this court reiterates, are barred by principles of *res judicata*, by virtue of the Chapter 11 Trustee's having already prosecuted that claim to final decision in arbitration. *See* Report and Recommendation, *supra*, at 7.

  The second theory asserted in the complaint is based on the contention that the Assigned Investor Claims also included claims deriving from the investor/creditors' status as "customers of a broker/dealer." As customers, says the plaintiff, they were owed *direct* duties by Zollino and Fahey in their capacity as broker/dealers. These are not, therefore, the "indirect" duties that Zollino and Fahey owed derivatively as officers or directors of the corporate enterprises. The plaintiff asserts that Zollino and Fahey breached this independent direct fiduciary duty, giving rise to direct claims against Zollino and Fahey for breach of those duties, as well as against Wells Fargo for its alleged knowing participation in this breach. The investors transferred these claims into the ICT

pursuant to the terms of the confirmed Plan, and the ICT Trustee now brings those claims on behalf of the ICT.

Breaches of fiduciary duties arising from a broker/dealer relationship with the investor/creditors would fall under what the *Gheewalla* court deemed direct claims belonging to individual creditors.[8] Such claims would *not* be brought as a derivative action because the harm alleged is a direct harm to the investor/creditors by Zollino and Fahey as broker/dealers. They would exist independently of claims owned by the corporation, and would not hinge on whether the corporate entities had entered the "zone of insolvency." The resulting claims are "non-insolvency based claims" that are not owned by the corporate entities, because it does not involve the breach of duties owed to those entities.[9]

The immediate answer to the district court's question, then, is that the plaintiff *has* indeed asserted a non-insolvency based claim: the defendants' alleged knowing participation in the alleged breach of duties owed *directly* to individual investors *vís-a-vís* Zollino and Fahey's status as broker/dealers. The existence of this non-insolvency based claim alters this court's *res judicata* analysis significantly because the court's earlier Report and Recommendation failed to take this claim into account. We must therefore evaluate this cause of action separately, testing to see whether it is barred by *res judicata*.

---

[8] As the *Gheewalla* court noted in *dicta*, creditors of a company have the rights to assert *derivative* claims against a company once it becomes insolvent, or they can assert *direct* claims against the directors at any time. *Gheewalla*, 930 A.2d at 103. An example of such a direct claim is fraudulent misrepresentation — that is, any false statements made directly to the plaintiff by the directors would give rise to direct claims outside of the scope of the directors' duties owed to the corporation.

[9] The actual defendant in this litigation is, of course, Wells Fargo. It is not Zollino and Fahey as such. The action against Wells Fargo being one for "knowing participation" in the breach of a fiduciary duty, however, requires as a prerequisite that we locate a fiduciary duty owed to the plaintiffs, and a breach of that duty. Thus, the analysis here has focused on that essential prerequisite.

**B. Are the Non-Insolvency Based Claims Barred by *Res Judicata*?**

The test for *res judicata* in the Fifth Circuit has four elements: (1) the parties are identical or are in privity; (2) the judgment in the prior action was rendered by a court of competent jurisdiction; (3) the prior action was concluded by a final judgment on the merits; and (4) the same claim or cause of action was involved in both actions. *Test Masters Educ. Servs., Inc. v. Singh,* 428 F.3d 559, 571 (5th Cir. 2005) (citing *Petro-Hunt, L.L.C. v. United States,* 365 F.3d 385, 395 (5th Cir.2004)). The doctrine applies equally with respect to a final judgment confirming an arbitration award. *See Myer v. Americo Life, Inc.,* 469 F.3d 731, 733 (8th Cir. 2006) (applying Texas law to find that *res judicata* barred re-litigation of the subject of a final judgment confirming an arbitration award); *see also Nauru Phosphate Royalties, Inc. v. Drago Daic Interests, Inc.,* 138 F.3d 160, 166-67 (5th Cir. 1998) (concluding that a party who did not participate in the arbitration process was nevertheless bound by its award where the non-participating parties had "related and congruent interests" with the participating parties) (citing *Isidor Paiewonsky Assocs., Inc. v. Sharp Props., Inc.*, 998 F.2d 145, 155 (3d Cir. 1993); *Cecil's, Inc. v. Morris Mech. Enters., Inc.,* 735 F.2d 437, 439-40 (11th Cir. 1984); *In re Oil Spill by the "Amoco Cadiz",* 659 F.2d 789, 795-96 (7th Cir. 1981)). All four elements must be met if *res judicata* is to bar the current action.

As applied to the plaintiff's claim premised on a breach of a fiduciary duty arising from a broker or dealer relationship, *res judicata* does not bar the pursuit of that action. This is so because the ICT Trustee is not the same party as either the former Chapter 11 Trustee or the former Plan Liquidator under the confirmed chapter 11 plan. The ICT Trustee *might* be barred by *res judicata* if he is acting as successor to the former Chapter 11 Trustee, but we know that he is *not* acting as successor to that legal entity with respect to the non-insolvency based claims. This is so because

the Chapter 11 Trustee did not assert — and more importantly, could not have asserted — those non-insolvency based claims. Here is why.

The Amended Joint Plan of Liquidation[10] created an Investor Claim Trust, or the ICT. The Plan provided that the ICT Trustee was empowered, *inter alia*, to "prosecute and/or resolve . . . the Assigned Investor Claims." Plan at 17, ¶ 6.3(f). An "Assigned Investor Claim" is a defined subset of an Investor Claim, which itself is defined as "a claim or cause of action belonging to an Investor *solely in his, her, or its individual capacity (specifically excluding all Estate Actions*[11]*)*." *Id.* at 7, ¶ 1.2.58 (emphasis added). The non-insolvency based claim described earlier in this Report is comprised of these "Assigned Investor Claims." Such claims, therefore, belong to individual investors and are quite distinct from actions belonging to the bankruptcy estates and assertable by the Chapter 11 Trustee or its successor.

The Plan Liquidator, by contrast, was to be "the *Estates'* representative under Bankruptcy Code section 1123(b)(3)(B) for the retention and enforcement of the Estate Actions for the benefit of unsecured creditors." *Id.* at 18, ¶ 6.4(a)&(b) (emphasis added). The Plan Liquidator succeeded to the causes of action held by the bankruptcy estates. The Plan Liquidator in fact prosecuted (or continued to prosecute) a number of those causes of action, including an action against Wells Fargo based on knowing participation in breach of fiduciary duties owed the corporate entities by Zollino and Fahey in their capacity as officers of those entities. That litigation, as we know, was submitted

---

[10] *See* Amended Joint Plan of Liquidation Proposed by Len B. Blackwell for I.G. Services, Ltd. and IWG Services, Ltd. (the "Plan"), Bankr. Case No. 99-53170-lmc, Docket #342 (*confirmed by* Order Confirming Amended Joint Plan Liquidation, As Modified ("Confirmation Order"), Docket #344).

[11] The Plan defines "Estate Actions" as one would expect them to be defined — "any cause of action asserted or assertable *by or on behalf of* the Debtors *or their successors* including, without limitation, actions brought under sections 541, 542, 543, 544, 545, 547, 548, 549, 550, or 553 of the Bankruptcy Code." *Id.* at 6, ¶ 1.2.45 (emphasis added).

to binding arbitration. The arbitrator ruled against the Plan Liquidator, and the district court confirmed that ruling and entered judgment accordingly. As we have already discussed, that action is *res judicata* as to any insolvency based claims, as discussed more fully in this court's previous Report and Recommendation.

Neither the Chapter 11 Trustee nor the Plan Liquidator prosecuted the Assigned Investor Claims described above, however, because those claims did not belong to the bankruptcy estates. More importantly, neither the Chapter 11 Trustee nor the Plan Liquidator *could have* prosecuted those claims.[12] Under settled law, they lacked the legal capacity to bring those claims. *See Caplin v. Marine Midland Grace Trust Co. of New York,* 406 U.S. 416, 434, 92 S.Ct. 1678, 1688, 32 L.Ed.2d 195 (1972); *see also E.F. Hutton & Co. v. Hadley,* 901 F.2d 979, 986 (11th Cir. 1990) (noting that *Caplin*, which was decided prior to 1978, remains good law under the revised Bankruptcy Code) (citations omitted); *Shearson Lehman Hutton, Inc. v. Wagoner,* 944 F.2d 114, 119-20 (2d Cir. 1991) (citing *Caplin* and discussing claims belonging to individual creditors as claims which the trustee, as a representative of the estate, lacked standing to assert); *Fla. Dept. of Ins. v. Chase Bank of Tex., N.A.,* 274 F.3d 924, 931 (5th Cir. 2001) (applying the reasoning from *Caplin* to conclude that the receiver of a failed insurance company could not assert claims belonging to individual creditors). In *Caplin*, the Supreme Court ruled that neither a debtor nor the trustee of that debtor's bankruptcy estate had the authority to assert claims belonging to individual creditors. In that case, a trustee in a reorganization under the Bankruptcy Act sought to assume the task of

---

[12] As will be discussed at greater length *infra*, it is both factually and legally irrelevant that the same human being might have worn these multiple hats (Chapter 11 Trustee, Plan Liquidator, ICT Trustee). In fact, Blackwell originally wore all three hats, and Medlin succeeded to his position (and took over the hats) with respect to two of those positions – Plan Liquidator and ICT Trustee. To limit confusion, this Report in this part uses the official title without reference to the name of the person functioning in that capacity.

suing an indenture trustee on behalf of debenture holders for alleged violations of duties owed to the debenture holders (who were also creditors of the estate). The Court explained that bankruptcy trustees lack standing to collect money not owed to the estate, that the trustee *could* sue on behalf of the corporation itself (even if the action is derivative in nature), but that the trustee *could not* sue on behalf of third parties. *Caplin*, 406 U.S. 428-29, 92 S.Ct. at 1685. The "Assigned Investor Claims" are, by their very definition, the exact parallel of the claims of debenture holders in *Caplin* — individual claims for direct harms asserted against Zollino and Fahey, and against Wells Fargo for its alleged knowing participation in Zollino and Fahey's wrongdoing. They are claims that could not have been brought by the Chapter 11 Trustee or by the Plan Liquidator. Under *Caplin*, the estates' representative lacked standing to represent ICT's interests *at all*. *See Caplin,* 406 U.S. at 434, 92 S.Ct. at 1688. An essential element for the application of the *res judicata* doctrine is thus missing — the same claim or cause of action was not (and could not have been) involved in the action that went to arbitration. *See Test Masters Educ. Servs., Inc. v. Singh,* 428 F.3d 559, 571 (5th Cir. 2005).

Similarly, the same parties are not involved. The current action is brought by the ICT Trustee. The arbitration action was brought by the Chapter 11 Trustee. As *Caplin* teaches, only the ICT Trustee can bring the current non-insolvency based claim (comprised of the "Assigned Investor Claims" as provided in the Plan). The Chapter 11 Trustee, a different legal entity, lacked the legal capacity to bring the non-insolvency based claim.[13] It is vitally important to keep in mind the *capacity* in which Medlin (and his predecessor, Blackwell) has been acting, and not be distracted by the identity of the person *acting* in a given capacity. The fact that the same human being wore

---

[13] In fact, the ICT did not yet exist when the Chapter 11 Trustee initiated this litigation, and the ICT Trustee did not succeed to the Chapter 11 Trustee's interests.

two different hats does not mean that there was an identity of parties. The same individual, acting in different capacities, has represented the interests of the bankruptcy estate and the interests of individual creditors. But because he served in two distinct capacities, he is anything but "identical" for purposes of *res judicata*.

Nor is the ICT Trustee a party in privity with the Chapter 11 Trustee. Privity exists where a party in the instant action: (i) was adequately represented in the prior action, (ii) controlled the prior litigation, or (iii) succeeded to the interests of the party from the prior action. *See Getty Oil Co. v. Ins. Co. of N. Am.*, 845 S.W.2d 794, 800 (Tex. 1992); *Amstadt v. United States Brass Corp.,* 919 S.W.2d 644, 653 (Tex. 1996). Privity is fact-sensitive and requires a careful examination into the circumstances of each case. *See Harris County, Tex. v. CarMax Auto Superstores Inc.,* 117 F.3d. 306, 316-17 (5th Cir. 1999) (quoting *Benson v. Wanda Petroleum Co.,* 468 S.W.2d 361, 363 (Tex. 1971)). As noted by the Fifth Circuit, "privity is not established by the mere fact that persons may be interested in the same question or in proving the same state of facts." *Id.* (quoting *Benson,* 468 S.W.2d at 363). More specifically, "privity connotes those who are in law so connected with a party to the judgment as to have such an identity of interest that the party to the judgment *represented the same legal right*." *Id.* at 316-17 (quoting *Benson,* 468 S.W.2d at 363) (emphasis added). In this case, as *Caplin* tells, the ICT Trustee and the Plan Liquidator represented rights that are quite distinct, even though they may have arisen under some overlapping facts.

The fact that the human being appointed to serve as ICT Trustee is the same human being who was appointed to be Plan Liquidator is essentially irrelevant to the privity analysis. All that matters is whether Blackwell, acting as ICT Trustee, "(i) was adequately represented in the prior action [by either the Chapter 11 Trustee or that trustee's successor, the Plan Liquidator]," or whether

-11-

Blackwell, acting as ICT Trustee "(ii) controlled the prior litigation," or whether Blackwell, acting as ICT Trustee "(iii) succeeded to the interests of [the Chapter 11 Trustee or its successor] from the prior action." The answer to each of these questions is clearly no.

We already know that the Chapter 11 Trustee was legally incapable of bringing the non-insolvency based claims held by individual investors, thanks to the teachings of *Caplin*. *Caplin* tells us that "the persons truly affected by the [prior proceeding] should make their own assessment of the respective advantages and disadvantages, not only *of* the litigation, but of various *theories* of litigation." *Caplin,* 406 U.S. at 431, 92 S.Ct. at 1687. Thus, the Chapter 11 Trustee could not, as a matter of law, have "adequately represented" the interests of those individual investors in the pursuit of those claims.

Nor could the ICT Trustee, in that capacity, "control" the litigation. *See, e.g., Astron Indus. Assocs., Inc. v. Chrysler Motor Corp.*, 405 F.2d 958, 961 (5th Cir. 1968) (holding that substantial identity for the purposes of control was demonstrated where the parent corporation authorized the lawsuit and an officer of the parent operated the subsidiary). Controlling the prior litigation would have proven difficult, if not impossible, for the ICT Trustee. The ICT did not even *exist* when the Chapter 11 Trustee initiated the insolvency-based action against Wells Fargo. It follows, then, that the ICT Trustee could not in any meaningful sense be said to have "controlled" the litigation.

Finally, we know from *Caplin* that the ICT Trust could not have succeeded to the interests of the Chapter 11 Trustee, at least insofar as the "Assigned Investor Claims" that comprise the non-insolvency based claim under consideration here is concerned. The non-insolvency based claims are not and never were "property of the estate," and that is the extent of the interests that could have been held by the Chapter 11 Trustee — so *Caplin* clearly teaches.

The defendants claim that privity *is* presented on these facts, warranting the application of *res judicata* to bar the plaintiff's assertion of even this non-insolvency based claim. Their pitch depends almost entirely on the false premise that the individual identity of the person serving in a given legal capacity establishes privity. But this pitch misses the point of *Caplin*. The Plan's designation of the same individual (Blackwell and, now, Medlin as his successor) as a representative of the bankruptcy estates and also of a class of investor-creditors is simply a red herring. Regardless of physical identity, the legal power of the party is defined by that party's *legal* identity.[14]

While there ought to be little doubt that the second and third elements of *res judicata* are satisfied — the arbitration panel was a court of competent jurisdiction, and the district court's final judgment confirming the arbitration award serves as the final judgment on the merits — there is no reason to discuss them, because *res judicata* will apply only if *all four* elements are satisfied. Here, we have already concluded that the doctrine fails because the first element is not met.

### RECOMMENDATIONS

Because the plaintiff has pled a non-insolvency based claim — the defendants' knowing participation in the breach of duties owed directly to individual creditors based on a broker/dealer relationship — which Medlin, in his capacity as the Chapter 11 Trustee and Plan Liquidator, lacked standing to assert in the prior arbitration proceeding, the court recommends that the district court allow the plaintiff to pursue this claim, as it is not barred by *res judicata*.[15]

# # #

---

[14] In other words, just because Medlin *owns* two caps does not mean that he always *wears* both caps.

[15] It is important to note that, in making this recommendation, this court makes no recommendation on the merits of the underlying claim. *See Shearson Lehman Hutton, Inc.*, 944 F.2d at 119 (quoting *AT&T Techs., Inc. v. Commc'ns Workers of Am.,* 475 U.S. 643, 649-50, 106 S.Ct. 1415, 1419, 89 L.Ed.2d 648 (1986)).